May I please the court and counsel, my name is Richard Ojabovic. I represent the defendant My client, the owner of certain real estate located in the city of Kankakee. Kankakee has an ordinance in place that says if real estate is being leased, rented, or occupied by someone other than the owner, that the owner must have a rental license. And in and of itself, we do not have a problem with the concept that the city can ask for a license. Our argument in this case concerns certain provisions that exist in that rental ordinance, mainly the inspection portion of the statute that I'm going to talk about in a minute, or of the ordinance. Mr. Ojabovic, before you go forward, I have a couple of questions about the ordinance itself. Does it apply to hotels and homeless shelters and bed and breakfasts? Because as I read the ordinance, it seems to be saying that every dwelling unit within a building has to have a license. Is that correct? That's correct. That's the way I understand the ordinance to read also. So if there's a hotel, they have to have a license for every unit? I guess the question is whether a dwelling unit means a place of somebody's actual residence, or does it mean a place of temporary residence? I don't know. Well, the residential burglary statute has been interpreted, the concept of dwelling has been interpreted to mean residence. Correct. Permanent residence. Correct. Intended to be semi-permanent. So that wouldn't include a shelter? I do not believe so. And so, you know, we see this all the time. Municipalities have licenses for things, business licenses, liquor licenses, vehicle stickers. And in those instances, we're talking about something that impacts the community or the public more directly, where members of the public at large or people passing through the municipality are going to come in and out and go use those various services in the businesses of the city. And so we would expect that they are going to regulate that more directly. But in this case, we're dealing with private homes, private property of landlords, and the expectation of privacy of tenants. And I think it's a little bit different in this instance when you say we're going to license that, but we're also going to put all these conditions in here. And obviously, the underlying major issue that we have is with the inspection provision of the ordinance, which basically says before you can have a rental license, this property has to be inspected. And it's on an annual basis, correct? It's initially annual, and then I think it renews every two years. But whenever the license is renewed, it's inspected. Why is that unreasonable? Because I've lived in some dwellings, rental homes, that had they been inspected, I wouldn't have been allowed to rent. Isn't this a public safety issue that landlords don't always bring their premises up to a reasonable expectation of what is habitable? I agree. And this is a quick way to figure out who's a good landlord and who isn't. Well, a couple things in response to that. One is that they obviously have their regular code enforcement department. They have the right to, if they have a suspicion or reasonable grounds to believe that there's a violation of the code, they can issue those violations, issue citations, investigate further, do everything else that we would expect the code department to do. The second thing is that, and then also if somebody phones in a violation, they can do that. But in this instance... How do you inspect in that circumstance? The tenant doesn't inspect, you complain, and then the city decides whether an inspection is warranted. Right. Isn't that a police department that's going over and inspecting? It's through the city. Right. And so my contention is going to be that they shouldn't have to do the inspection at all, or if they should, it should be conducted in a certain manner subject to the Tobin case that I'm going to talk about in a minute. There is notice to the tenants that's provided. Aren't they given 24 hours notice? They're given, I believe the statute says, or the order says five days. So nobody's rushing in. No. Looking for drugs or... No. The tenant knows there's going to be an inspection. Right. Okay, this all goes back to the Camara case, which predates most of these rental ordinances, which basically said that warrantless searches of residential property violates Fourth Amendment rights. That was the US Supreme Court case. And then a lot of the municipalities, particularly in the state of Illinois, that wanted to have this power enacted ordinances, many of which are similar in part or in totality to the ordinance that we have here. And in the Tobin versus City of Peoria case dealt with many of the same issues that have been raised here today. What was interesting about that ordinance is a couple of different things. One was that obviously the city in that case, similar to the city of Keikiki, is concerned with the condition of their rental property, probably condition of all property within its municipality. In the Peoria ordinance, it said that inspections would only take place for a property constructed prior to a certain date. I think it was 1961 or something like that. And that the inspection would cover 15 specific violations that were deemed to be the most potentially serious health and safety violations. In this case, the ordinance says the inspection will cover all property maintenance, all life safety codes enacted by the city of Keikiki. So I think it's too extensive. This is a little bit different than when you sell a piece of property and you have these municipalities that have ordinances where you have to produce proof that the smoke detectors and the carbon monoxide detectors are working upon the transfer of the property. That's a very limited scope. They're coming in looking for one thing in a very limited area. The nature of the intrusion there is very slight. Here, the ordinance itself says they can basically inspect anything under the property code. So we believe that even if this inspection has to take place, we believe consistent with Tobin, it should be more limited to what exactly they're going to inspect than what. So that's the initial why we do the inspection in the first place or what should be inspected. And then we have the consent issue, which also ties in somewhat with Tamara. And the ordinance says landlords deemed to give consent, his consent is presumed just because he fills out an application for a rental license. The ordinance doesn't even seem to give him the option to refuse. Or if it does, the ordinance doesn't really say what happens. The same provision of that ordinance goes on to state that they attempt to do two things. First is it basically says that if a tenant refuses consent, that that's deemed to be probable cause for the possible existence of a warrant. But there's a requirement of the lease also. Well, that's what I was going to get to next. There's a provision that says all written leases shall contain a clause stating the tenant shall consent. I don't know that the tenant should have to give up that right in the lease, even if that's just a contract between the landlord and the tenant. See, I think there's a difference between the general clauses in a lease between a landlord and a tenant where the landlord has the right to reasonably come on the premises, apply reasonable notice to the tenant, and so forth and so on. You talk about the private owner and the private tenant. Here we're now involving the city, the state, police action. I think that's a little bit different. I don't know that they should be able to interject themselves into the lease in this manner. So the tenant has to give up certain privacy rights that they want to live on rental property and the city can't keep. Also, even though it says notice shall be given to the tenant of the inspection, it doesn't really say what that notice entails. And here's why I point that out. I believe it's the Platt case cited in my brief. It said that the tenant has to be advised of their right to refuse the search or if they refuse the inspection. Or if they refuse the inspection, what happens because of that? There's nothing in the ordinance that says what the tenant has to be notified of other than there's supposed to be an inspection at X date, Y time. So I think that there needs to be something more in their ordinance in order to do that. And in any event, there's nothing else in the record that shows what notice is given to either the owner or the tenant under such an instance. So then the question becomes, if there's an inspection set and somebody doesn't consent, what happens? Well, under the ordinance, it doesn't say what happens if the landlord agrees to what if the landlord now doesn't consent. The ordinance suggests that if the tenant refuses, that the municipality is expressly empowered is the words that we're choosing to go seek a warning. And I guess part of the question is what does expressly empowered mean? I read the Tobin case to say that we have to take the discretion out of it. And basically, if there's an ordinance that says you shall have a rental license and somebody refuses, the city shall get a warrant. That's the way I read Tobin. And the reason I point this out is that was the way I was interpreting expressly empowered. The trial court in her memorandum of opinion doesn't seem to suggest that that says shall. And if it's not, then I think it runs afoul of Tobin. I think that if you're going to have a warrant provision, I believe it has to be mandatory. And if expressed in power doesn't mean mandatory, then. . . And why do you suggest that it should be mandatory? I believe Tobin suggested that if you're going to have a provision like this, you take the discretionary authority away and say this has to happen if there's a refusal, so that it's not applied in an unequal manner or an equitable manner against this property. What's inequitable about allowing somebody to apply for a warrant and leaving it up to a judge as to whether there's probable cause? Well, I think you still have to do that anyway. I think what they're saying is. . . If the tenant refuses your saying, you have to go to a judge. Right. Right. You have to go to a judge. You have to go get a warrant. It's presumably probable cause under their own ordinance. And because this is permissive, do you think it's unconstitutional and proper? Yes. I think it should be mandatory, that provision of it. The bottom line is with this inspection stuff, that why couldn't they. . . They can obviously inspect the exterior of a property the way code officers do now, which is basically they can go to a particular location. If they're driving down the street and they see somebody's porch falling off, it's something they see. I just believe this inspection can be a lot less intrusive. Why can't they inspect the exterior of the premises, and then if for some reason based on that or based on reasonable grounds for suspicion of another known code violation, then do a more extensive search? That's the same thing if it's permissive to whether or not to seek a warrant. They observe things and think, well, maybe it's not necessary in this case to seek a warrant under the present. Right. I mean, they still have to decide whether there's a code violation or not in that instance. What do you think happens to a tenant when they complain and complain and complain to the landlord that the sewer system is backing up into their apartment, or there are roaches in their kitchen every night when they flip on the light? If the tenant complains too much to the landlord, what do you think happens? They get booted. So this is a very protective way for the tenant to say to the city, they're not doing anything. Please come in and look. Please come in and look. But that scenario you just described, the tenant can call the city or report a code violation any time during their tenancy. Does that trigger an inspection? I believe it can under their ordinance. I think that if they come in with the existence of a known code violation, I think then they have the right to reasonably investigate further under their code. There's a lot of, I'll say, slum landlords that have property that looks great from the outside. Correct. And you would not want to live on the inside. Why do you think this less rigorous inspection of the outside is sufficient? Well, like I said, the tenant can still report a code violation. They can say, I haven't had water here for two weeks. I reported it to my landlord. He won't do anything about it. Nothing about this inspection ordinance usurps the city's rights to investigate and prosecute code violations. It doesn't stop, you know, if they drive by and there's trash on the lawn, it doesn't stop them from ticketing the landlord or the owner, who in turn is going to turn around and try to enforce that against the tenant. It doesn't stop that at all. I guess my question is why do we need to inspect property before it's rented, just because it's being rented, without any reason to believe that there might be code violations in the property? I mean, if a regular homeowner sells their residence in town to a new homeowner, they're not required to have an inspection before, at least in terms of the city, before they sell the property to a new owner. They have a home inspection by someone else. Correct. Before they can borrow money. Right, right. And isn't it presumed that if you own the property and you live in the property, you're going to want it to be habitable? There's a difference where the landlord owns the property and a tenant who can't afford their own home lives in an apartment. I think landlord owners come in varying degrees, same as regular homeowners. You're right, a regular homeowner on a sale has a little bit more of an incentive, but there's also some people that will try to cover up obvious things to sell their home that get discovered later on that sometimes can pass an inspection. Well, it's a constitutional aspect that there could be a rational basis. There is a rational basis for a difference in treatment between the purchase, I'll write that, of residence and rental property. I mean, you can list different rationale for the distinctions between those two kinds of activities, purchasing property versus renting property. Sure, I would agree, I would agree. As I understand your argument, you're saying that because Camara makes these inspections, searches and seizures under the Fourth Amendment, that Fourth Amendment procedures have to apply  and a warrant has to be supported by probable cause. I'm trying to get through what you're arguing. Right, I mean, I believe there should be a reason other than the property is being rented for them to be able to do an extensive inspection of the property. Okay, and with regard to the consent in the lease, what you're saying is that the consent, if it's required in the lease, is maybe not knowing and... Possibly not knowing, or if it is knowing, it's being compelled. Here's the other interesting thing. There's nothing, though, in the ordinance that says I have to have a written lease. So if I don't have a written lease, I don't have that clause anyway, so why do I have to put it in there just because it's a written lease? There's nothing that says there has to be a written lease for the rental property. This isn't a declaratory action. Do you have standing to challenge the tenant's rights? I believe I do because of the city initiating the litigation. And you say that with some hesitation. Well, I think that if they just sent us a letter saying this condition existed or you need to do this and there had been no litigation filed, then I don't think there's a controversy and I don't think there's standing. I'm wondering about your standing to raise these arguments about the Fourth Amendment difficulties with respect to the tenants. Well, I think we do because I think as the landlord, it affects our ability to contract with them. Counselor, your time is up. Okay, thank you. Thank you, Counselor. Counselor, thank you. Is this an overwhelming power that the city has to interfere with the right to contract? Certainly not, Your Honor. And by way of introduction, my name is Mike McGrath. I'm from the law firm of Olson. Thank you, Counselor, for your time. We've just come in on behalf of the city of Kankakee. We just filed our appearance, but we have extensive municipal experience. As far as this ordinance, this ordinance was adopted by the city of Kankakee, like a number of municipalities throughout the state of Illinois, adopting the International Maintenance Code. And as you, through some of your questions, it serves a very good, legitimate, reasonable purpose to protect renters and people that might not have the knowledge or the skill set to know if they're living in a safe environment. They might not know if there has to be ground fault interrupters or if there's electrical issues or if there's a whole host of reasons for this ordinance and it is a good standard, a good ordinance. As far as the standard, Counsel concedes that it comes under the rational basis standard of the Constitution. I take it by reading his brief, he takes more issue with Judge Turngate's decision in not going through an elaborate analysis on legal protection, subject to due process and the procedural due process. I'm not aware of any case law that states that the trial court has to lay out the whole analysis and render it a decision. The decision was more of a summary and conclusion. It was. The judge laid out what the law is as far as those areas of a constitutional challenge and then found that the ordinance of particular sections was all constitutional. And this is actually the second time this ordinance has come up. It's come before this court two years ago. Justice Carter and Justice Wright upheld the constitutional challenge to this ordinance in the Barreau matter. We believe that the judge was correct. This panel was, this court was correct two years ago in finding that it's a constitutional ordinance. It serves a rational basis to protect renters. It has safeguards within it. There is the inspection that has to be given before the license is issued and then there has to be subsequent inspections with notice for the renewal of the license. And that is just for the general welfare, safety, and well-being of the residents and the community at large. I understand the initial inspection and the value of that. I have some question about the two-year renewals without any complaints or any indications that there are any problems. Just going in on a two-year basis and re-inspecting. Well, under the rational standard basis, I believe it's reasonable to do it. There has to be some time period that is established to go in and to re-inspect. And if you want to continue to have the rental license, you have to agree to the inspection. An inspection two years after the initial inspection would take care of any issues that have come about since the initial inspection. Obviously, if there's railings missing from a staircase, broken stairs inside the house, electrical plumbing, any of the issues that the inspectors are looking for. I'm very brief. I rely on the briefs. If there's no other questions, I believe that the trial judge ruled appropriately, laid out the law, and found that the ordinance was constitutional. How long has this ordinance existed? I know we looked at it two years ago, but how long has it existed? I really don't know, just because we're newer to KKK. Do you know anything about how often there is a search warrant authorized pursuant to this ordinance? In the city of KKK, I do not have that information. Thank you for your time. Thank you, Counsel. Counsel. Just a brief rebuttal. Since I know some members of the court are familiar with the Burrell case, that was one of my contentions was that it's not applicable to this case. Maybe for the general proposition that an ordinance is presumed valid. In Burrell, the property owner was suing to try to compel a rental license. I believe he owed the city money or there was a judgment or something, some financial obligation that needed to be relieved before he could get a rental license. And in that case, the court correctly said, the rental license is not a protected property right. I made clear in the very beginning of my pleadings in this case, and the argument on the motion for summary judgment in the trial court that, I'm not arguing that the city can't require rental licenses. That's not the legally protected property right. In this case, I believe it's the right of the landlord to contract and do, and the right to the use of his property subject to whatever other laws and ordinances apply, and the rights of the tenant that exist consistent with their privacy rights, or however we square Camara and the city of Peoria with the current ordinance. As I understand your argument, you're saying that this ordinance interferes with the property owner's broad right to use the property any way he wants. Correct, that is part of our argument. There have been a century of restrictions on the property owners, it needs to be their ownership of the property. There are, like I can't dump trash on my property, I can't do this, I can't do that, absolutely. Those things have been upheld by the Supreme Court of the United States and the courts for years. In those instances, you have a landlord, property owner, taking an action that violates an existing regulation or ordinance. Here, we're saying, the city is essentially saying that the violation of an ordinance is created because you won't give us an inspection, an inspection that we're arguing either shouldn't be necessary or should be more limited. My issue in part was the courts relied on Burrell, because I believe other than a general proposition, as the constitutionality awarded, it says it wasn't applicable to the facts of the argument. With regard to your arguments related to the tenant, it seems it sort of turns this upside down, because the purpose, it appears one of the purposes of getting the license is to, in a general sense, to protect leaseholders' tenants or protect tenants from having property that's really not applicable or problems. They have the same rights to report code violations whether there's... I understand that. It doesn't appear to be irrational to think that sometimes people in that bargaining position between the landlord and the tenants, the tenant is many times in less of a bargaining position is being landlords in many instances. And there's probably some instances where it's hard to find property to rent or maybe the person they can only rent this property in case of financial circumstances or whatever. So, what's so rational? I mean, how do you say that this is protecting the tenant, that your arguments are protecting the tenant? Because they have the same rights and obligations under the code, whether there's a rental license or an inspection done. They can still report... The duties of the city don't change because of that. Duties of the tenant don't change. Whether, even if this ordinance didn't exist, they could record code violation. I don't know that those two necessarily correlate to each other automatically just because the city requires a license and puts other... I mean, the property is still owned by somebody, whether it's licensed or not. There's still somebody that can be held legally accountable for code violations. Does the tenant have a right to live in a slum? No, they don't have to. Oh, maybe somebody can't afford to move out of Kankakee. Maybe somebody doesn't have a car to relocate. But these are all issues... They are simply by being a tenant, not because some rental license ordinance requires an inspection. Just as Justice McDavis is trying to understand your argument, I am also struggling to understand your argument. The use and enjoyment argument, as I see it, is basically if I, as a landlord, can find a tenant that is willing to pay me to live within these four walls, then I should be able to rent the apartment. If I can find somebody that wants to live there, I should be able to rent it? Yes, I do think so. Under all circumstances? Subject to whatever other... I mean, I can't... It's an upstairs apartment in a two-story thing, and there's no stairway to get up there, even if somebody signed a lease. I either have to provide a stairway for them, because that's what's proper under the code, independent of this whole inspection ordinance. The landlord has certain duties and obligations that exist, independent of this ordinance. How would health concerns relate to the argument with regard to the tenant and or the landlord? Whether or not it's a healthy environment? Why? Whether it's a healthy environment? I guess whether something's reported by a tenant. Like I said, whether this ordinance exists or doesn't exist, I guess the city has to decide at that point in time. Because once something's reported to them, they have certain powers and duties that kick in under their code enforcement. Would you object if the license didn't require an inspection? If you had to spend $1,000 every year to get a rental license and there was no inspection? No, because I think the city would be within their power to do that. I know sometimes when licenses are put in for businesses, liquor licenses or whatever, one of the complaints is that the cost of those escalate. But I don't have a problem with that. I think then you're accomplishing some of the same objective. Now the landlord, if they need the license, does have a bigger financial stake in it because of that. So in essence what you're saying is it's the same as getting a license to have a dog. If you want a dog and you pay the money and the city can't get you, you can keep a dog there. Your argument is if I have a terrible building but I want to rent it out, I should be able to pay for that privilege. Right, and if it's a terrible building, I still run the risk the city's coming after me for code violations. It's a matter of economics whether you want to risk an inspection where you have to comply or whether you slide by. I mean, if I have to get a vehicle sticker, they're not requiring me to go get my vehicle inspected. They just pay us the fee to get the sticker because you live here. Would you be making the same argument today if the ordinance, instead of requiring an automatic two-year inspection, required an inspection every time there was a change of tenant? My argument would be the same. Why? Maybe if there was change of owner but not change of tenant. Because tenants rotate monthly. They can rotate monthly or every seven months. Right, you could be in there all the time then. But you don't have the problem of invading the privacy of the person who's living there. Right, I mean they... Which seems to be a major part of your argument. So it avoids all of that. Correct. So then what do you argue? Well, similar to you brought up a question earlier that I had contemplated in the very beginning and may have even been asked in court but not a third motion. Somebody touched on it, so it's not in the transcript, which was what if, fine, you want to do an initial inspection, but why do you have to do follow-ups or renewals in the absence of a known violation? Not willing to waive the arguments that I made as to the initial inspection, but that kind of starts to go down the road of if you're doing it in the beginning but not for the renewals, kind of goes a long way. And what I'm saying, which is if there's no reason to believe or suspect that there's a code violation, why are we doing an inspection in the first place? Thank you. Thank you, counsel.